Porter, J.
A rehearing has been granted in the case on the application of the appellant, and he now contends that the mortuaria, or proceedings, connected with the inventory and sale of Le Breton’s estate, must be taken together, and has argued that it clearly results from an examination of the whole of these documents, that the representatives of the deceased intended to sell, and that he contemplated buying the entire depth of sixty-six arpents.
I think that they may be looked into, and I agree, that if it should be found the adjudication, to the defendant refers to those proceedings for a description of the thing bought, that the whole may be taken and construed together.
On the death of Le Breton, application was made by some of his creditors, to the tribunal then established in this country, for the sale of his estate, and the liquidation of the debts due by the succession. Before the demand was finally acted on, Boré, tutor of the children, by the first marriage, petitioned, that the plantation with its appurtenances might *115 be sold, and an order to that effect was given and carried into execution.
An inventory had been previously made. In that instrument, this property is described as follows : “ las tierras de la havitacion de Don B. Breton tal que se halla e comporta, y conforme a los titulos que deven existir en el oficio de Don Pedro Pedesclaux; ” when cried on the plantation, it was designated as "la habitacion de estos bienes y succession," but no bidder being found to go as high as two thirds of the estimated price, the sale, on the petition of the parties interested, was adjourned to town. Here we find for the first time a particular description is given of the plantation, and it is stated, in the process verbal, to contain seven arpents front, with the ordinary depth.
It was put up at public sale three several times in the city before it was adjudged, a special act is made of the proceedings on each day. In the first it is stated, that the land was cried at auction, and that all present were called on to mejorar, advance on the bid of Florian, for a plantation of seven arpents front with the ordinary depth. The instrument which contains this description, is signed by the notary, by Le Breton D’Orgenoy, *116 Deschapelles, attorney of the widow, Boré, curator of the children by the first marriage, Guinault, representative of those of the second, and by Daniel Clark one of the syndics.
The second time it was cried, the same proceedings took place; it is again designated as a tract of land having the front and depth, already mentioned, and the act is signed by the same parties, and by the present defendant who on that day was a bidder.
The third and last time it was exposed, it is once more cried as a plantation of seven arpents front by forty deep, and is adjudicated as such to the appellant in this suit, who with the other persons already mentioned, sign the process, verbal of the adjudication, some days after he executed "la fianza" in which he declared that he entered into an obligation for the payment of a plantation purchased at the sale of Le Breton’s estate, containing seven arpents in front con la profundidad ordinaria.
It is unnecessary to state any other of the proceedings, as the decision of the point before us, must turn on the effect of the instruments just referred to.
I take it to be incontrovertible that unless *117 the vendors thought there were more than forty arpents in depth, and the buyer believed he was purchasing more, that there is no ground for permitting him to take any thing beyond it. And this position is not the least affected by an admission, which I readily make, that the order from the proper authority was to sell all Le Breton’s property; if neither the heirs, nor their representatives were acquainted with the real extent of this property, and by mistake sold less; what remains is for them.
That the extent of the plantation (conceding the twenty-six arpents of wood land purchased in the rear to make a part of it) was not known to those who made the inventory, is apparent from the expressions used in describing it, neither front nor depth is given, but it is stated to be composed of lands according to the titles in a notary’s office in New-Orleans. If the quantity which those titles gave a right to, had been known, we must presume the usual mode of stating that quantity would have been pursued, and that they would not have referred to papers in the custody of other persons, to ascertain the fact, if they had been acquainted with it themselves.
*118 To this strong testimony of the vendors not possessing an exact knowlege of the plantation owned by the deceased, we have still more positive evidence, that they did not understand it to have a depth of sixty-six arpents, when put up at auction in the city, the mode of designation first pursued of referring to the "mortuaria" is dropped. They explain what they conceive the "habitacion," to be composed of. In three several instruments of writing, executed at three different times, and signed by the representative of the widow, the tutors for the children, and the syndics of the creditors, it is declared to contain seven arpents in front with the ordinary depth, and to have been cried as such. It is difficult, it appears to me, now to conclude with the appellant, that these acts were not understood by the parties to them; that they did not read what they put their names to; every rule of evidence is opposed to the idea, and I do not think, that after such a lapse of time we are permitted to yield to conjecture, in opposition to express terms, and the presumptions created by a repeated use of them.
I am aware it may be said, these errors *119 ought not to injure the buyer. This argument would be entitled to much consideration, if it appeared he had been led into error by the description given to him of the property ; nothing of that kind, however, is alleged, and as his pretensions rest in a great measure, not on what was done, but what was contemplated to be done, the enquiry into the opinion of the vendor as to the quantity then about to be sold, is highly important. Let us next see, what was that of the vendee himself?
He does not appear in this transaction, until the second time the property is exposed at public sale in New-Orleans, and in the instrument which records what took place on that day, it is stated, that the notary on crying it at auction, called for a "mejora" on a bid of Livaudais for a plantation of forty arpents deep, by a front of seven, and that Fouché did rise on that bid. This act the defendant signs. He also signs the act of adjudication on the next day, by which the property is described as having the extent just stated, and the obligation or "fianza," executed by him, some days after he declares that he had bought the plantation of Le Breton, having *120 the front already mentioned with the ordinary depth.
I am of opinion that his understanding of what he bought, is as clearly manifested by these acts, as we have already ascertained the vendors, to have been, and I have in vain endeavoured to believe he would have signed these instruments, if he had known, or even imagined they gave him less than he purchased. The fair conclusion it appears to me from the whole proceedings is, that neither seller, nor buyer, knew the plantation to have sixty-six arpents in depth ; and if the representatives of a deceased person mistake the real extent of his estate, and sell but a part, when they intend to sell the whole, I am unacquainted with the law, which gives the portion that remains to the purchaser.
When, says Pothier, the object of the contract is an "universalité de choses," it comprehends every thing which composes that "universalité," though the parties had no knowledge of it. But he adds this rule, suffers an exception "lorsqu'íl paroit au contraire que les parties n'ont entendu traiter que des choses contenues sous cette universalité qui etoient a leur connoissance, comme lorsqu’elles ont traite relativement *121 a un inventaire". He gives as an example, where one man sells to another his right to all the moveables of a succession as contained in an inventory, and states that if there was any thing else, not comprised in that instrument of which the parties were ignorant, it would not pass under the contract. Pothier, traité des Obligations, no. 99. Had the inventory stated “ all the lands of B. Le Breton, containing forty arpents in depth,” and the sale been made in reference to that description, the particular quantity stated, would have controuled the general terms, “all the lands”—this is the very case put by the author. Instead of that we have “ all the lands” inventoried, but no quantity given, and the sale is made of a certain number of arpents. If there is any difference in those cases, I am unable to perceive it.
It is a settled rule that instruments of writing should be so interpreted that every part of them, if possible, is to have effect. Admitting that the adjudication in this case, referred to the “mortuaria” were we to say that by the word “ plantation” must be understood one of seven arpents front by sixty-six, those expressions which state it as having but forty *122 become useless; in the other alternative, the term plantation is not inconsistent with that which designates it as one of the ordinary depth. The latter construction should therefore be preferred.
It is proper, as there is a difference of opinion in the members of the court, to notice the several arguments by which the appellant’s claim has been supported.
Many of them go to shew the original intention of the parties to sell the whole of the plantation. I have already observed that such,I believe, was their intention; but a knowlege of what they intended aids us but little in settling the rights of the parties before us, unless we can discover that they carried into effect what they had in view. The more material enquiry is, what did they sell, when the property was put up at auction and adjudicated.
Still less do I conceive it necessary to go into a severe inquiry, as to the causes which led to the error. It has been conceded there was a mistake made by the representatives of the deceased, as to the quantity of land, possessed by their ancestor, and I have already stated what in my opinion was the legal con *123 sequence of such a mistake. For no matter how great may have been the error, it does by no means follow that the defendant can have more than he bought; he may on that ground avoid the contract altogether, but he cannot substitute an other in its place. The true question here is this, does the title of the appellant give the land to him? Are the expressions, which in so many acts limit him to forty arpents, controuled by others that will enable him to take sixty-six?
He insists they are so controuled for several reasons, and principally because the plantation was appraised in reference to certain titles, cried at auction in reference to this appraisement: and bid for in the first instance in relation to those titles. Hence, he concludes, that as he raised on the bid of those persons who offered a price for the whole, this gives him a right to every thing they could have obtained, and that the more especially, because he went to two-thirds of the price at which the entire plantation was estimated.
In examining this argument in which consists the whole strength, or nearly so, of the appellant’s case, the first thing to be considered *124 is, whether the facts support it. I believe they do not. The ajudication does not give to Foucher all the lands mentioned in the "mortuaria," it does not state that there is sold to him every thing Clark bid for; it makes no reference to the inventory; nor to what Clark offered : it simply states that a tract of land with certain limits has been bought by him. The idea then that all the written proceedings, respecting Lebreton’s estate, are to be taken as a deed of sale, and that the expressions in one part may be explained and controuled by those of another, does not appear to me correct. If the act, under which he holds, had referred to the inventory for a description, it would have presented a very different question: as it does not, I see no ground, for the position that they must be construed together.
But it is contended, Clark bid for all; Florian advanced on whatever Clark bid for; Livaudais raised on Florian’s offer, therefore Foucher who was called on to "mejorar" the bid of Livaudais has a right to go back, and take whatever he could claim. I do not believe there is so entire and complete a privity between persons at public sales, as this ar *125 gument implies. Were an auctioneer to present three slaves, and call on the bye-standers to advance on an offer just made for them, it would be going far I think, to hold that a person bidding on this annunciation, and having the property stricken off to him, could be compelled to receive two, because the person who preceded him had only bid for that number. The rule, if a true one, must bear this test.
The case of the appellant however, is not so strong as that just put, as the bid he was asked to raise on, was stated to have been for a certain quantity, which quantity corresponds exactly with that given at the time he first offered a price for the land, and that found in the act by which he finally acquired. To give this argument of the appellant, however, its due weight, it becomes necessary to examine attentively the facts. The inventory states no particular quantity. After Clark and Florian had went as high as they deemed prudent, on a description referring to another place for the extent and limits of the property, Livaudais presents himself, and on being called on with others to mejorar a bid of Florian, for a plantation of seven arpents front with *126 forty deep, we find that he does advance on it. The defendant, in this suit, on the next day, is asked if he will raise on the offer which Livaudais had made for a plantation having a front on the river, of seven arpents with forty in depth, and he agrees that he will. The first deviation therefore, from the original description commenced with Livaudais, and had he purchased, he might perhaps have complained (though with a bad grace) that he did not think he was buying according to the limits given to him, and that he intended to purchase the indeterminate quantity that Florian had bid for. But does the appellant stand in his place to correct the error into which he may have been betrayed ?—Surely not ;—for he does not advance on Livaudais’ bid, leaving the quantity to be ascertained by referring to another act, but on Livaudais’ bid for a plantation of forty arpents in depth. Can it be correct then to say, that he purchased in reference to Clark and Florian’s bids for an unknown quantity, when the act tells he advanced on another man’s bid for a certain quantity ? I think not ; and I am clearly satisfied that the appellant first offered to purchase on the description given to Livau *127 dais of what the plantation contained, not that found in the “ mortuaria;" and that description corresponds exactly with the limits stated in the act of adjudication. But it is said, as the lands were not sold until the price offered amounted to two-thirds of the original appraisement, we must therefore presume it was intended to sell the whole. This is perhaps true; but if they did not sell it all, the circumstance of two-thirds of the original appraisement being given for a part will not entitle the buyer to the whole: intention is of little importance if it was not carried into effect.
Great stress is laid on the possession of the original title, because the law has directed the auctioneer immediately after the sale, to deliver it to the purchaser. This is setting up presumptive evidence in opposition to direct proof, and in my opinion the positive testimony must prevail. The effect which this circumstance would have is much weakened by reflecting that if this title was placed in defendant's hands immediately after the sale, it would have at once informed him that he had purchased more than the ordinary depth ; and if so, he surely would not have signed an instrument afterwards by which he declared *128 that he bought but that quantity,—nor would he have suffered six years to elapse before he intimated that there was error in the description of what he purchased.
There is no evidence before us that the parties to these acts did not understand Spanish, and if there were, the argument drawn from it would prove too much, for it would establish that neither vendor nor vendee knew what they were doing; consequently nothing could have been acquired on one side, or alienated on the other.
Nor, in my opinion, ought the cause to be decided, on the evidence of a witness that by the words "ordinary depth" were meant sixty-six arpents. This is contradicted by the grant under which the appellant claims, for it describes the twenty-six arpents as a second or extra depth ; by the surveyor general in his plat of survey, who marks the first forty as "la profundidad ordinaria," and then designates the remainder by particular lines; by the appellant himself who did not believe the expressions ordinary depth, gave him this land, and applied to the syndics for another title; and lastly, by the universal meaning attached to these words, or their equivalent, in other lan *129 guages, under the three governments which have possessed Louisiana.
I do not think that by the word appurtenance a double depth passes, when the vendor declares he sells forty.
What then, in a few words, is the whole case? Property, as of an unknown quantity put up at sale and bid for as such, afterwards, and before adjudication described as having a known quantity, and purchased by a particular designation of its limits. Under these circumstances I feel constrained to say that there has not been sufficient evidence produced to enable us to reject the positive description given in the act by which the defendant acquired. Our former judgment should therefore remain undisturbed.
Martin, J.
The defendant's counsel has been heard, on a suggestion that our former judgment erroneously considered him without title to the back tract of his plantation.
He has drawn our attention, which had been confined to the process verbal of the day of the final adjudication, to those of the preceding days, to the inventory, appraisement, petition and order of sale. He urges that the *130 several process verbal of the auction with these documents, constitute but one record, his title; that where a part of a record is apparently variant from the rest ; it is proper to rectify the variance, or the error by the other parts of the record, the concordance of which manifests their correctness; that an inaccurate description of the premises sold, in the habendum & tenendum of a deed, may and ought to be rectified by a different one in the other parts of it, in which uniformity and other circumstances place its accuracy beyond doubts.
The whole mortuaria of B. F. Le Breton, or proceedings for the inventorying, appraising and selling the estate he left behind, makes part of the record in the case before us.
The defendant’s counsel urges, that from a close examination of this mortuaria, a conviction must inevitably result, that the officers who made the inventory of his estate, the appraisers, the relations and creditors of the deceased who provoked the sale ; the magistrate who ordered it ; the notary, or auctioneer who executed the order of sale ; the different bidders, all were impressed with the idea that the whole plantation of the deceased *131 was the thing inventoried, appraised, prayed for and ordered to be sold, bidden for, and lastly adjudged.
If we consider all the documents, inventory, appraisment, petition, order of sale, and the process verbal of the sale, on the days on which the bids of Clark and Florian were renewed, it is impossible to have the least doubt of the correctness of the proposition which the defendant's counsel endeavors to establish; and it is equally clear that if we consider only the process verbal of the days on which the bid of Livaudais and that of Foucher were made, the proposition will appear ungrounded.
I cannot entertain a doubt, that any part of a record, on which a manifest error is alleged to have crept, must be examined and compared, with a view to the detection and correction of the error, with the other parts of the document, and in giving effect to the whole, a judgment must be formed on a comparison of the parts. Iniquum est nisi totâ lege inspectá, de unâ aliquá ejus particulâ judicare, vel respondere. 8 Co. 117. Incivile est nisi de totâ sententia inspectâ de aliquà parte judicare. Hobart, 172. These quotations, though immediately *132 taken from books of the common law of England, evidently came there from the Roman, and the proposition they contain is almost self-evident.
The counsel for the defendant first calls our attention to the inventory and appraisement.
Las tierras de la habitacion, the lands of the plantation. For the situation, description and contents of this plantation, we are referred by the mortuaria, to the titles, which ought to be, que deben existir, in the office of P. Pedesclaux, notary public.
The copy of the titles, extracted from the minutes of that office, shews that the deceased purchased on the same day, by the same instrument, from the same persons, and for one price two tracts of land, which the defendant’s counsel contends constituted the plantation; a riparious one of the depth of forty arpents, and a back one of the same width and of the depth of twenty-six arpents.
The counsel urges that the plantation sold was described as consisting of two tracts, because the vendor had acquired the premises by two titles, viz : the riparious by purchase, several years before, and the back tract, by *133 a grant from the Spanish government, on the day preceding the sale.
From the inspection of the inventory and appraisement, and of the titles of the deceased, to which the makers of the inventory refer us, I think the conviction is irresistible that they meant to inventory and appraise the whole plantation; and the plaintiff's counsel has not been able to point out a single circumstance giving rise to the belief or suspicion, that the parties were under an error and believed that the deceased owned the riparious tract only. The purchase had not been made so many years before, that its extent might have been forgotten—it was not a distant estate—Boré, the grand-father and tutor of the deceased's children, lived on the land contiguous thereto. The grant of the back tract was among the deceased's papers, and it will be seen by and by, was surrendered to the last bidder, the defendant, according to law, at the conclusion of the auction.
The counsel for the defendant next places under our eyes the petition of the relations and creditors of the deceased, to the judge, provoking the sale of the property of the estate, which the situation of the affairs of the deceased *134 imperiously demanded. In this document the applicants pray for the sale of the plantation, with every thing annexed or corresponding thereto, de la havitacion, con todo a el annexo y correspondiente. It is urged, and I think with considerable reason, that neither in the inventory and appraisement, in the petition, nor in the order of the judge who ordered the sale accordingly, nothing allows us to believe that the riparious tract alone was contemplated. Nothing shews that the parties were under an error.
In the process verbal of the first day of the auction, the premises offered for sale are described as the plantation of this estate and succession, la havitacion de essos bienes y succession. The counsel for the defendant urges, and I think with great reason, that these expressions clearly relate to the whole plantation, not to the riparious tract only ; but the counsel of the plaintiff contends the parties were all in error, they were ignorant of the back tract of thirty-six arpents, being a part of the estate. Of this mistake, ignorance or error, the record affords not the least suspicion. On the contrary, the presence of the grant, among the papers of the deceased, in the possession of *135 his friends—their knowlege of the existence of the deceased’s titles in the office of a notary residing near them, afford some kind of negative evidence.
On this day, Clark was the last and highest bidder, for $16,000 ; but this being less than the two-thirds of the valuation, no adjudication was made.
In the process verbal of the second day, the notary describes the premises offered for sale as the plantation of this mortuaria, la havitacion de essa mortuaria, and Clark’s bid on the first day was raised by different bidders, and lastly by Florian, to $16,600 ; but this being still below two-thirds of the valuation no adjudication was made.
It is not easy to deny the assertion of the counsel for the defendant, that the record clearly shews that both, Clark and Florian, did bid for the whole plantation of the deceased. He urges that the premises sold were described in the process verbal of the first day, as the havitacion de essos bienes y succession, the plantation of the estate and succession, on that of the second, la havitacion de essa mortuaria, literally the plantation in this record of the proceedings had on the death *136 of, &c. In the first part of the record, the lands of the plantation are inventoried and appraised, and reference is made to the act of sale, in the office of Pedesclaux, the notary. By the inspection of this document, we find that the deceased had purchased, as I have already observed, two tracts, a riparious and a back one, which constituted the plantation, inventoried, appraised, the sale of which had been provoked by his relations and creditors, ordered by the judge and therefore proceeded on by the notary.
In the process verbal of the third day of the auction, the notary describes the land as having the ordinary depth, el fundo ordinario ; expressly informing the bye-standers that he was continuing the sale, which he had began by order of the judge, and calling on them to raise, mejorar, the last bid, viz : Florian’s for $16,600; Livaudais on this day was the last and highest bidder, having offered $19,600. This sum being still less than two-thirds of the valuation, no adjudication was made.
In the process verbal of the third day, the premises were described as they are in the rest of the record, as having the ordinary depth. In the morning of that day, Fou *137 cher, the present defendant, raised Livaudais’ bid to $20,000. A few dollars were lacking to reach the two-thirds of the valuation, and, in the afternoon, he raised his bid to $20,025, and the land was adjudicated to him.
The counsel for the defendant produces the original grant of governor Miro, to Villiers the vendor of the deceased, for the back tract of twenty six arpens in depth, which he alleges was delivered to him immediately after he executed his obligation for the price of the adjudication, according to the provisions of the Spanish law.
The counsel urges that the defendant, having been indulged with an extension of the day of payment, he did not take out his title till the payment was completed and having discovered the error, obtained, from the syndics of the deceased, a notarial act acknowledging that it was thro’ mistake, that in the latter part of the mortuaria, the plantation was described as having the ordinary depth only.
It seems to me that the change made by the notary, in the description of the premises, in the latter part of the mortuaria, was a clerical error of that officer only. The judge had ordered the sale of the property inventoried and *138 particularly of the plantation. The back tract made a part of this. It was inventoried and valued as a part of this. The idea that the relations and creditors of the deceased were ignorant of the deceased’s right to the back tract is, in my opinion, repelled by the presence among the papers of the deceased of the original grant of gov. Miro to Villiers, surrendered to the deceased at the time of his purchase and by the judge to the defendant, after the adjudication. This back tract made de facto and de jure a part of the plantation, and the notarial act referred to by the appraisers, as existing in the office of Pedesclaux, furnishes complete legal evidence that this tract was inventoried and appraised, and its sale provoked by the relations and creditors of the deceased, ordered by the judge and commenced by the notary.
The variance in the description of the premises, which first appears in the process verbal of the third day of the auction, was introduced by the spontaneous act of the notary, and must be considered as a mere error. Nothing induces a belief that he had the intention of altering the thing sold—to put up in distinct lots, the two tracts which con *139 stituted the plantation, the sale of which he had begun. This he could not well have done, without the consent of the parties. And in the very process verbal, far from announcing such an intention, he declares that he is continuing the auction already began and that the by-standers were invited to raise (mejorar) the bid of $16,600, made on the preceding day by Florian. The conclusion is irresistible that those who overbid, did bid for the very same thing, for which Florian had bid.
When, on the evening of the last day, the defendant raised the former bid to $20,000, the judge declared his inability to consent to an adjudication, as the plantation was valued at $30,050, and so the defendant's bid was less than two-thirds of the valuation. If we take the mortuaria, with a view to ascertain what quantity of land constituted the plantation which was valued at $30,050, of which the deceased’s relations and creditors had solicited the sale, which the judge had ordered, we find by an inspection of the act of sale, to which the appraisers refer that the plantation consisted of two tracts, having together a depth of sixty-six arpens. If in the sequel the *140 mortuaria presents another description, we must inquire whether the variance was the authorised act of the parties, or whether it has not the character of a clerical error of the notary.
Nothing enables us to conclude that the variance resulted from the intention of the parties, that a different thing should be pressented as the object of the sale, on the last days. The parties did not make any application, the judge did not order the sale of any thing but the plantation, according to the inventory and appraisement, and the notary expressly mentions in the preamble of his process verbal of the third day that he intends to proceed on the sale, and auction already commenced. If we then believe. as we necessarily must, that no alteration was intended by any of the parties, we must conclude that the change or alteration in the description was erroneous.
I consider the whole record of the mortuaria, as one entire deed, the title of the defendant. In the inventory or appraisement, which I consider as the preamble of the deed, the premises intended to be sold, are described in such ample manner, that it is *141 impossible not to conclude that the whole plantation, composed of the two tracts, was the object inventoried and appraised.
It is, however, urged by the plaintiff's counsel, that the parties were ignorant of the extent of the plantation, and believed that it consisted of the riparious tract only.
This appears to me a gratuitous assertion. It is not to be reconciled with the circumstance that they knew that the deed, by which the deceased had acquired, was in the office of a particular notary, close by them.—that they were in possession of the grant of Gov. Miro to Villiers, the deceased's vendor, of the back tract, surrendered at the time of the sale. Bore, the curator of the deceased's heirs, by the first wife, (his daughter) owned and lived upon the adjoining tract.
The quantity of land, alluded to in the appraisement, was certain. Id certum est quod certum reddi potest. If absolute certainty be required in any thing, it is in a final judgment, and we have held that it is sufficiently certain, although the amount decreed be not mentioned therein, but appear only from the documents in the suit. Dickins' executors vs. Bradford's heirs, 4 Martin, 311. Here the quantity of land in *142 ventoried and appraised, as constituting the whole plantation, is made certain beyond a doubt, by the reference which is made to the title in Pedesclaux’s office.
If we believe that the quantity of land inventoried and appraised is certain and definite, we cannot entertain a doubt that the quantity, for the sale of which the order of the judge was solicited, is equally so : for the petition refers to the inventory and appraisement.
No doubt can be entertained that the judge ordered a certain and determinate quantity of land to be sold, viz : two tracts, inventoried and appraised.
Nor that the notary, by whose instrumentality the sale was made during the two first days of the auction, intended selling a certain and determinate quantity, viz: that which the judge had ordered him to sell; that of which the sale had been petitioned for; that which had been inventoried and appraised, and which by a reference made by the appraisers to the record of Pedesclaux, clearly and unequivocally appears to be that contained in both tracts.
Clark and Florian bid most certainly for those two tracts.
*143 Notwithstanding all this, the counsel for the plaintiff says, we must conclude those who made the inventory, the appraisers, the relations, the creditors of the deceased, the notatary, were all under a mistake and firmly believed the plantation consisted of the riparious tract alone, and none of them knew there was a back tract, which had been purchased with the riparious one. Yet it is shewn the original grant of governor Miro to Villiers and wife, the vendors of the deceased, for this back tract, was among his papers, and is referred to in his act of sale.
The counsel for the plaintiff urges that the inventory and appraisement refer not to titles which certainly, but probably are, in the office of Pedesclaux : que deven existir. The literal translation of this expression in our language “which ought to exist,” favors, I admit, the conclusion of the counsel.
Had the appraisers intended to represent the existence of the titles to the property they valued as probable only, not as certain, they would have said que deben de existir, instead of que deben existir.
Debe de ser, says De la Hurta, supposes the existence of a thing, which of itself appears *144 doubtful. The scripture says so, and debe ser creido, we must believe it; because there can be no doubt. Others say so, it ought to be believed : debe de ser creido ; because common opinion renders it probable—induces a belief that it is so. Sinonimos Castellanos, CXVIII, debe ser, debe de ser.
We are to presume that the makers of the inventory and appraisers, who acted under the obligation of an oath, did their duty. That they required correct information of the contents of the plantation: and that such information was given them.—That it was within the reach of the parties, we have the most conclusive evidence.
The counsel of the plaintiff discovers, what he terms conclusive evidence, of their ignorance of the contents of the plantation, in the absence of a description of it by a reference to the quantity of arpents in the front and depth.
Appraisers, almost universally, attend on the land to be valued : they preambulate it : the boundaries are pointed out to them. They are seldom, hardly ever, attended by a surveyor: the title deeds, not being necessary to the operation which they are called on to perform, are rarely produced to them. As the *145 eye does not enable them minutely to ascertain the length of the lines, there is no necessity of their stating it, and it suffices that they should clearly designate what they value. This was, unambiguously done, in the present case, by a reference to the titles, in the notary’s office.
If we admit, and I am unable to see how we can doubt it, that the appraisers valued what they inform us they did, the plantation of the deceased, according to the titles, &c. we must consider it as a matter of no moment, whether the relations and creditors had correct or incorect information, or any information at all, in regard to the extent of the plantation. They petitioned for the sale of the plantation, according to the inventory and appraisement, and it was ordered accordingly by the judge, whose decree is sufficiently certain : it refers, as to what is ordered to be sold, to the appraisement and the appraisement refers to the title. Here we have legal certainty, and there is not the least ground to imagine that any body erred.
The notary proceeded to carry the judge’s order into execution ; on the two first days of the sale, the proceedings are carried on with *146 legal certainty; he describes what he is selling, by a reference to the antecedent part of the record. Clark and Florian bid accordingly.
On the third day a variance creeps into the record. What is its character? If it was not voluntary, it must have been erroneous. The notary, who made it, cannot be supposed to have intended to vary, to change the thing, which was the object of sale. Nothing induces a belief or suspicion that he did : every thing shews that he did not: indeed, he had not the power. If, by using a different expression, he varied, he changed the thing, while he had not the intention of doing so, he erred.
The counsel for the defendant urges that this was the case; and he presents the following circumstance, as the cause of the error:—Hitherto, the auction had taken place on the plantation: on the third day it was continued in the city, and the notary, being thus near Pedesclaux’s office, imagined it correct to resort to the title of the deceased, in order to give the most accurate description of the plantation he was selling. Taking up Villiers' sale to the deceased, he took down the de *147 scription of the riparious tract, given in the first page, the recto: and as this description finished the page, he stopped without turning the leaf. Thus, the description of the back tract, which immediately followed, in the beginning of the second page, the verso, escaped his notice.
There is considerable force in the observation of the counsel, that it is impossible to connect the conduct of the notary, in this particular, with that of the appraisers, a considerable time before, so as to conclude that the description, now given by the notary, is evidence of the ignorance of the appraisers of the true contents of the plantation.
I cannot receive it as such ; and my mind remains impressed with the idea that the appraisers did not err—that they valued what they certified they did value—the whole plantation as described in the act of sale of Villiers; and, when I look over that document, I find the back tract included, as part of the plantation.
It is clear the relations and creditors petitioned for the sale of the whole property appraised, and I do not think that the subsequent proceedings could be declared less valid, on *148 positive evidence, that the petitioners had not a correct idea of the contents of the plantation. They wished the whole sold, and it suffices, for the regularity of the sale, that the appraisers should appear to have known what they did value. They were not parties to the proceedings after the order of sale, and the expressions thereafter used in the description of the plantation, without their knowlege, cannot aid us in discovering what passed in their minds.
It is true the relations and creditors subscribed the process verbal of the last days; and the counsel for the plaintiff urges, that their signatures are evidence of their belief that the back tract was no part of the plantation. To this, the opposite counsel replies, that their signatures, at the foot of the process verbal of the proceeding days, are equally evidence of the contrary.
It is further urged that the proceedings of the mortuaria, like all judicial proceedings, were carried on in the Spanish language. That all the relations and creditors who subscribed (with the exception of an Irish gentleman) appear by their names to be French, and may well be presumed to have been ignorant of *149 the Spanish language. This objection, in my opinion goes too far—for it would avoid every act couched in any language but the vernacular one of a party. It cannot, however, be denied that when fraud, or error is suggested, it may have some weight.
Errors, in legal proceedings, ought not easily to be presumed.—Those who are conversant with those of the Spanish government, in Louisiana, know they were not rare. The counsel for the defendant has laid his finger on two important ones, besides the one which is the ground of the question that embarrasses us. In the sale of the estate of L. F. Lebreton, deceased, L. F. Lebreton himself is named as one of the relations, who assisted thereat, ante 14. At the conclusion of the sale, under consideration Louis Foucher is named as the vendee, while he was only surety for the defendant, his brother, Pierre Foucher.
It is clear that either the appraisers or the notary erred. Nothing, I say emphatically no thing, enables me to conclude the former did err. The latter was attempting to describe what he had been ordered to put up at auction, and he had been ordered to put up what *150 had been appraised. His description does not accord with what the appraisers describe, and as I cannot conclude that they erred, I must say the notary did.
I rather think that the signatures of the relations and creditors do not cure the notary’s error. The sale was a judicial one—the judge was the principal party—they assisted at the sale to see, on the part of those whom they represented, that it was fairly carried on.
The judge himself was under no error, when according to the prayer of the applicants, he ordered the sale of the property appraised.
But, the counsel of the plaintiff urges that he afterwards approved the final adjudication, which was of the plantation “ with the ordinary depth,” an expression which effectually excludes the back tract.
The possession of the original grant of the back tract is presented to us, by the counsel, as conclusive evidence that the judge considered this tract as part of the plantation. But, the counsel for the plaintiff replies that the defendant did not shew when, where, or by whom this document was delivered to him. If the payor of a note present it, the legal *151 presumption is that he obtained it fairly, i. e. by paying its amount. When nothing unfair is shewn, omnia recte presumuntur.
In the present case, every thing tends to support the presumption. that the grant was delivered to the defendant by the parties, who had provoked the sale, under the direction of the judge, who had ordered it.
The Spanish law makes it the duty of the judge, by whose order a judicial sale (one ordered by a judge) is made, to cause the applicants to deposit the titles of the premises sold, que incontinente ponga en el officio los titulos, and when the vendee has complied with the terms of the sale, these titles are delivered him, with a copy of the process verbal of the sale : se le entrega los titulos, con la escritura de venta. Febrero adicionado, 2, 3, 2, § 5, no. 335.
Here, the relations and creditors of the deceased applied for the sale of the whole plantation, and every thing corresponding and appertaining thereto, according to the titles in the office of Pedesclaux. The judge directed such a sale and the notary evidently proceeded to the sale of the premises so ordered to be sold. Now, as the applicants do not appear to have altered their minds; as the *152 judge rever modified his order, it was the duty of the former to deposit in the office of the judge, the titles to the whole premises, the sale of which they had provoked, viz: to both the riparious and the back tract—and the judge was bound to see that such a deposit was made. The vendee had also a right to require this, before he complied with the terms of the sale. After these terms were complied with, it was the bounden duty of the judge to have the titles thus deposited, in his office, surrendered to the vendee. Now, the defendant shews by the inventory, that the back tract made part of the plantation, the sale of which was petitioned for, ordered and begun—that he was the vendee, and he produces the original grant or title, to this tract. His counsel urges, and I think very properly, that these circumstances, in the absence of any proof (and in this case there is not even a suggestion) of his having obtained possession of the document unfairly, or at any other time, or manner, (or from any other person) that he received it, after having complied with the terms of the sale, from the judge, who had ordered the sale, as the only original part of the titles to the land sold, *153 which was in the possession of those who had applied for the sale. If this possession be not a legal presumption, the production of a note by the maker is no legal presumption of its having been surrendered to him by the payee, on the payment of its amount.
If we believe this, and I see no ground for disbelief, the conclusion is inevitable, that the land mentioned in the grant was intended by the judge to pass as part of the plantation.
The defendant, it is true, subscribed the process verbal of the last day of the sale, and the obligation for the payment; in these documents the purchased premises are described as having the ordinary depth.
His counsel urges, that notwithstanding this he may, if the error be proven, obtain its correction, by the antecedent parts of the mortuaria. If the error had been the reverse of what it is, and instead of diminishing the quantity of land had encreased it, could the vendee have resisted the amendment ?
Beyond the back tract of twenty-six arpens, is another of fourteen, that once made part of the plantation, which we have formerly seen, while it belonged to Belair, had a depth *154 of eighty arpens.—Ante 13. Now, if the notary instead of using the expression “the ordinary depth,” had used that of “the depth of eighty arpens,” could Fouchér have claimed the last tract of fourteen arpens, and would not the court have said that it was proper to ascertain what the notary had been authorised to sell by the judge, what the relations and creditors had requested the judge to order the sale of—what had been inventoried and appraised—what was contained in the sale from Villiers, to which the appraisers had referred ?
In such a case, even if the deceased had been the owner of this last tract of fourteen arpens, having acquired it distinctly, or by another title than that to which the reference was made by the appraisers, his heirs might say they were ignorant of the existence of this tract, as part of the succession. There would not be the least room to believe that it was inventoried or appraised, and Foucher would certainly have been restrained to the quantity of land which, from the mortuaria, would appear to have been appraised and ordered to be sold.
Lastly, if additional evidence be required of Foucher’s belief that he had acquired *155 the two tracts, we have, independently of the care which he took to secure the original grant of the back tract, the declaration of the syndics of the creditors of Lebreton, consigned in a notarial act, in which they declare that it is thro’ mistake, that the words “with the ordinary depth,” were inserted by the notary, in the process verbal of the two last days of the auction—that the sale of both tracts had been petitioned for, ordered, and in their belief, carried into effect. We have it also in the silence of the heirs, who, although they must all be of age, upwards of twenty years having elapsed since the sale, have never imagined that this back tract was not sold.
My mind more easily receives the idea that the error crept in the record, in the manner which the counsel for the defendant suggests, and passed unnoticed by the relations, the creditors, the judge and the defendant, than it can entertain a belief that the family, creditors and neighbors were ignorant of the extent of the plantation, while it was known that the act of sale, in which its extent was particularly stated, was in the office of a particular notary, residing within about six miles from it; while the original grant of Governor *156 Miro, for the back tract was among the paper the deceased.
Lastly, fraud is never to be presumed ; it must be proven, before a judge permits himself to believe it exists. Now, I cannot arrive at the conclusion, to which the argument of the plaintiff’s counsel is calculated to lead me, unless I assume it as a fact (without the least tittle of evidence and even without suggestion) that a gross fraud was committed. The original grant of the back tract, in the possession of the defendant, is presented to us and is really a very strong evidence that this tract was adjudicated to him. This document made part of the papers of the deceased, and if it did not pass into the hands of the defendant, in the manner in which he alleges he received it, I must conclude he obtained it unfairly—fraudulently. The meanest individual has the right to expect that his judges should presume him honest till the contrary is made manifest. I ask, what evidence have I to doubt the correctness of Foucher’s conduct ?
To conclude, it seems to me that the defendant’s counsel by placing before us the proceedings which preceded the proces ver *157 bal of the last days of the auction, has fully manifested that the notary committed a clerical error, which we are able to correct by a close examination of the anterior parts of the mortuaria, and which, in my humble opinion is placed beyond doubt by the production of the original grant.
Moreau and Mazureau for the plaintiff, Hennen, Grymes and Livingston, for the defendant.
I think therefore, that the judgment we hitherto pronounced in this case, ought to be set aside, and there ought to be judgment for the defendant, with costs of suit, in both courts.