## EMILE SAINET v. WIDOW DUCHAMP et al.

*A* conveyed to *B* a house and lot for the sum of $5,500, which the purchaser obliged himself to pay to the seller in one year from the date of the contract, with the express agreement, however, that the purchaser, his heirs or assigns, should have the right to prolong the payment of the sum of $5,500, indefinitely and at their will, on paying the vendor or his heirs or assigns, interest annually in advance, at the rate of seven per cent. per annum—*Held:* That such a contract is not a contract of sale, but one of " rent of lands," *rente foncière ou bail à rente.*

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J. H. H. *Taylor,* for plaintiff and appellant. *G. LeGardeur* and *Julien Seghers,* for defendants.

MERRICK, C. J. The facts of this case are correctly stated in plaintiff's brief, as follows, viz :

" In 1832, the father of the plaintiff sold to *Mr. Bernard Duchamp,* a house and lot, for the sum of $5,500, with the stipulation that the purchaser, his heirs or assigns, should have the right to prolong the payment of the price, indefinitely and at their will, on paying the vendor, his heirs or assigns, interest in advance, at the rate of seven per cent. per annum. The following is the clause referred to :

' La présente vente est faite pour et moyennant la somme de cinq mille cinq cents piastres que l'acquéreur s'oblige de payer au vendeur dans un an à partir de ce jour, étant expressément convenu entre les parties que l'acquéreur aura le droit de prolonger indéfiniment et à sa volonté, lui, ses héritiers ou ayans-cause le remboursement de la dite somme de cinq mille cinq cents piastres, en payant au vendeur ou à ses héritiers ou ayans-cause, et annuellement, les intérêts de la dite somme sur le pied de sept pour cent par an payable d'avance en la demeure du vendeur ou de ses héritiers dans l'étendue de cette paroisse, le tout ainsi que l'acquéreur s'oblige.'

" This property afterwards passed into the possession and ownership of *Mrs.*

*Delphine Ezèmie Macarty,* by act of sale from *Charles Claiborne,* (who acquired by mesne conveyances from *Mr. Bernard Duchamp,*) before *Carlile Pollock,* dated 7th April, 1836. In the act of sale to *Ezémie Macarty,* is the following clause : " The balance of said price of $5,500, is to be paid in the obligation which the present purchaser hereby takes to assume, as she hereby does assume, the before recited mortgage in favor of *Emile Sainet,* and to pay unto the latter, his heirs or assigns, *to the acquittance of the present seller and all other preceding* vendors, the full amount of said debt of $5,500 in capital and interest, annually in advance, in conformity to the tenor and true intent and meaning of the before recited act of mortgage, in favor of said *Emile Sainet,* on the 10th of February, 1832.'

" The present plaintiff became the owner of this claim by purchase at probate sale of his father's estate.

" *Bernard Duchamp* died in 1832, soon after the purchase, leaving a large estate, exceeding the sum of $20,000 over and above his debts.

" The interest not having been paid in advance for the year 1857, according to the terms of the agreement, this suit is brought to recover the price both against the widow and heirs of *Bernard Duchamp* and *Ezémie Macarty,* who assumed the obligation of *Duchamp,* and bound herself to execute the same."

It is conceded by counsel on both sides, that the contract is either one of rent of lands or annuity, and if the contract were to be construed as simply a sale, the rights of the plaintiff under it, would be the same as in the case of an annuity.

The case, therefore, as presented by counsel, involves only a comparison of the definitions and provisions of the Code of 1825, in reference to the two species of contract.

If it be the *rente foncière,* a tract of land, or other immovable, has been conveyed by one party to the other, to be held by the latter as owner, but reserving to the former an annual rent of a certain sum of money, or of a certain quantity of fruits *which the other party binds himself to pay.* C. C. 2750.

Now, the contract under consideration, has but one of the qualities called for by the definition, viz, the conveyance of a tract of land. It is wanting in this essential particular, viz : There is no reservation of an annual rent of a certain sum of money or fruits, which *the other party has bound himself to pay.* There is no obligation on the part of the vendee, to pay the rent which the other party could inforce by an action. He had the right to prolong the payment of the price indefinitely by paying the seven per cent. interest annually in advance. The creditor, therefore, had no action (distinct from his demand to inforce payment of the capital) to recover the annual interest upon the price of the sale, for the moment the interest was not paid in advance, the condition upon which the capital was to be exigible, had happened, and the debt (and seven per cent. interest, which it seems could not be recovered separately,) was demandable. 10 Mart. 116.

Now, the contract of rent (where it exists) is a real contract, and follows the property. The holder of the property, and not the one who acquired it under the contract, if he has sold it, is responsible for the rent. C. C. 2758. And this rent charge being inherent in the property, burthened with it, is itself susceptible of being mortgaged, except when gratuitously established. C. C. 2763.

Now, in the case before us, what right did the vendor acquire by the sale which he could mortgage ? He could not demand the rent by suit, for it was entirely optional with the debtor, whether he would pay it in advance or not.

There was, therefore, *no right*, in the language of the Code, " inherent to the property," which could be mortgaged. The contract of rent charge, therefore, did not exist.

The contract of annuity, *la rente constituée,* is defined by the Code, to be a contract by which one party delivers to another, a sum of money, and agrees not to reclaim it so long as the receiver pays the rent agreed upon. Art. 2764.

Now, the contract sued upon, is precisely the contract above defined, except in the single particular, that it has been brought about by the sale of land. The sum of money delivered, has been produced by the sale of a tract of land. This appears to us in no manner material, for the land is supposed to be converted into money in all sales of the same, and the notes given for the price circulate as commercial paper before maturity, without reference to the original consideration. We can see, therefore, no objection to the manner in which the capital was raised, which formed the *rente constituée.* Trop. vente, No. 647 ; 5 Martin, 312. Nor can it any manner prejudice the contract, because it is accompanied by a mortgage and the vendor's privilege. For a mortgage may be given to secure the fulfilment of any obligation whatever. C. C. 3258. And on the non-payment of the interest in advance, after the expiration of one year, the *price* was demandable, and, therefore, secured by the vendor's privilege.

No prescription could run, for the plaintiff had no cause of action until the breach of the condition.

The demand in warranty is well founded against those parties who have promised to fulfil the obligations of the original vendee. C. P. 379 ; *Keane* v. *Goldsmith, Haber & Co.,* 12 An. 560.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and now proceeding to pronounce such judgment as ought to have been rendered by the District Court : It is ordered, adjudged and decreed, that the plaintiff do have and recover of the said widow and heirs of *Bernard Duchamp,* deceased, the sum of five thousand, five hundred dollars, with seven per cent. interest thereon per annum, from the 10th day of February, 1857, until paid, the one-half of said sum and interest to be paid by said *Widow Rosalie Pedesclaux (Duchamp) ;* and one-sixth part thereof to be paid by each of said heirs of *Bernard Duchamp,* viz, one-sixth of said debt and interest, by said *Caroline Durel,* one-sixth by *Clarissa Duchamp,* and one-sixth by *Adéle Duchamp,* the same being their virile portions of said debt and interest. And it is further ordered, that the plaintiff recover judgment against *Delphine Euginée Macarty,* for the same debt of five thousand five hundred dollars, with seven per cent. interest thereon, from said 10th day of February, 1857, until paid, upon the *stipulation pour autrue,* the plaintiff being entitled only to one satisfaction of said debt and interest; and in the event said debt and interest, or costs, or any part thereof, shall be paid by said widow and heirs of *Duchamp,* to the plaintiff : it is ordered, that they have judgment, and are hereby authorized to issue execution for the same amount on their demand in warranty against said *Macarty.* And it is further ordered, that said *Macarty* do have judgment for said $5,500, and interest thereon, at the rate of seven per cent. per annum, from said 10th day of February, 1857, until paid over, against said *Adelaide Blondeau* and *Henriette Blondeau,* each for their virile share of the same. And it is further ordered, that the plaintiff recover of the defendants his costs in both courts, and that the defendants in warranty pay the costs incidental to the demand in warranty respectively.

SAINET
v.
DUCHAMP.

COLE, J., dissenting.  In 1832, the father of the plaintiff sold to *Bernard Duchamp* a house and lot for the sum of $5,500, with the stipulation that the purchaser, his heirs or assigns, should have the right to prolong the payment of the price indefinitely and at their will, on paying the vendor, his heirs or assigns, interest in advance, at the rate of seven per cent. per annum.  The following is the clause referred to :

" La présente vente est faite pour et moyennant la somme de cinq mille cinq cents piastres, que l'acquéreur s'oblige de payer au vendeur dans un an à partir de ce jour, étant expressément convenu entre les parties que l'acquéreur aura le droit de prolonger indéfiniment et à sa volonté, lui, ses héritiers ou ayans cause, le remboursement de la dite somme de cinq mille cinq cents piastres, en payant au vendeur ou à ses héritiers ou ayans-cause, et annuellement, les intérêts de la dite somme sur le pied de sept pour cent par an, payable d'avance, en la demeure du vendeur ou de ses héritiers dans l'étendue de cette paroisse, le tout ainsi que l'acquéreur s'oblige."

In 1836, *Charles Claiborne*, who had acquired the property by mesne conveyances, from the succession of *Duchamp*, sold it to *Ezémie Macarty*, herein called in warranty by defendants, for the price of $7,800, in deduction of which she paid cash $2,300, and for the balance entered into the following engagement, to-wit:  " The balance of said price, to-wit, $5,500, is to be paid in the obligation which the present purchaser takes, to assume, as she hereby does, the reversion of the before recited mortgage in favor of *Emile Sainet*, and to pay unto the latter, his heirs or assigns, to the acquittance of *Cla borne* and the heirs of *Duchamp*, the full amount of the said mortgage in capital and interest, according to the tenor and true intent and meaning of said act of mortgage from the late *Bernard Duchamp* in favor of the late *Emile Sainet*, of the 10th of February. 1832."

The interest not having been paid in advance for the year 1857, according to the terms of the contract, this suit is brought against the widow and heirs of *Duchamp* and *Ezémie Macarty*, to recover from them the whole amount of the capital above mentioned, to-wit, $5,500.

The principal question is, the nature of the contract declared on : is it a " contract of rent " (rente foncière), or a " contract of annuity " (rente constituée) ?

The first description of rent did not exist in the Code of 1808, and is derived mainly from Pothier's Contrat de Bail à Rente Foncière.  Code of 1808, p. 408, Art. 33, chap. 3 ; Pothier, Contrat de Bail à Rente, cap. 1, secs. 1 to 5.

The learned jurists of the Louisiana bar who were commissioned in 1822, for the purpose of proposing additions and amendments to the Civil Code of 1808, say, at page 92 of their report :

" The contract of rent (rente foncière), which is now pretty common among us, has not found a place in the Code, (that of 1808).  We have thought it necessary to supply this omission, and to include under a single title both rents and annuities."

They accordingly proposed the adoption of the whole title of " Rents and Annuities," which was, on their suggestion, incorporated in the Code of 1825, as may be seen from Article 2749 to 2771 inclusive.

The essential characteristics of the contract of " rente foncière," or rent of lands, are, that one of the parties conveys and cedes to the other, in perpetuity, a tract of land, or any other immovable property, and stipulates that the latter shall hold it as owner, but reserving to the former an annual rent of a certain sum of money, or of a certain quantity of fruits, which the other party binds himself to pay him.  C. C., Arts. 2750, 2751.

The act passed in 1832, between *Emile Sainet* and *Bernard Duchamp*, contains these essential provisions of the contract of rent of lands, and although bearing the name of a sale, is therefore a contract of " rent of land."

The law of this contract is, that the property remains perpetually subject to the rent, into whatsoever hands it may pass, and the person alienating it is only answerable for the arrears which became due while he was in the possession. C. C., Arts. 2757, 2758.

As the property which was transferred by the act of 1832 to *Duchamp* is not in the possession of any of the parties now sued, the action ought to have been instituted against the present possessors of the same, as the present defendants are only answerable for the arrears of rent which became due while they were in possession, and there is no allegation that they did not fulfill their obligations in this respect. C. C. 2758.

Plaintiff relies on the case of *Mayor* v. *Duplessis*, 5 M. p. 309. This is not applicable, for it was decided in the year 1818, previous to the new Code of 1825, which has modified and added to the law analogous to the action at bar.

It is objected, that the contract under consideration has but one of the qualities called for by the definition of Article 2750 of the Civil Code, to-wit, the conveyance of a tract of land  Such does not appear to be the case.  Article 2750 declares, " that the contract of rent for lands is a contract by which one of the parties conveys and cedes to the other a tract of land, or any other immovable property, and stipulates that the latter shall hold it as owner, but reserving to the former an annual rent of a certain sum of money, or of a certain quantity of fruits, which the other party binds himself to pay him."

This Article reserves to the obligee " an annual rent of a certain sum of money."

If, then, a certain interest upon the estimated value of the property conveyed be specified, it is as much a payment of rent, as if a particular amount were specified as rent.  And indeed, as a general rule, the rents of houses and other property represent the interest of the capital invested in such houses or property.

Besides, Article 2750 is not the sole one that treats of the contract of rent, and other Articles must be examined to comprehend fully the subject.

Art. 2752 declares, " that a contract made, bearing the name of a sale, in which the seller does not stipulate the payment of the price, but a capital bearing interest forever, is a contract of rent."

The sale now under consideration appears to be embraced in this Article, for the property is valued at a certain price, which represents the capital, and it bears interest forever.

It is also objected, that there is no obligation on the part of the vendee to pay the rent, which the other party could enforce by an action distinct from his demand to enforce payment of the capital.

It is true, that the vendor in this contract has the right of demanding the capital as well as the interest, in default of payment of the interest, and that the interest is payable in advance; but the parties, by thus changing the features of their contract, on immaterial points, from those of the contract of rent in the Civil Code, have not destroyed the material characteristics of the contract of rent which are impressed upon their act.

Besides, the vendor would have the privilege of waiving the right of demanding the capital, and might sue for the interest alone.

The clause in the sale making the capital due at once, in the event the interest be not paid, is made for the benefit of the vendor, and may be waived by him.

The essential parts of the contract of rent are, that one party cedes to the other in perpetuity a tract of land, or any other immovable property, and agrees that the latter shall hold it as owner, but reserving to the former an annual rent. The Civil Code does not make it essential that the rent should not be made payable in advance, nor that, in default of payment of the rent, the capital should not be exigible at once, as well as any rent that might be due at the commencement of the suit. C. C. 2750, 2751.

Art. 2762 declares that, " the rentor has for the payment of his rent a right of mortgage on the property, commencing from the date of the contract, but he cannot have it seized and sold, unless there be at least one entire year's rent due."

The last clause is a mere provision of the law, which governs in the absence of any modification by the contracting parties ; it is not a prohibition, and like any other right, may be dispensed with by the lessee, in whose favor it was enacted.

It is also objected, that the rent charge being inherent in the property burthened with it, is itself susceptible of being mortgaged, C. C. 2763, and as the rent was payable in advance, there is nothing to mortgage.

The right of mortgage given by this Article is for the benefit of the vendor, and if he thinks proper to mould his contract so that it cannot be enforced, there is nothing in the law to prevent him from so doing.

It is also said, that this is a contract of annuity. Such does not appear to be the case, for the contract of annuity is that by which one party delivers to another a sum of money, and agrees not to reclaim it so long as the receiver pays the rent agreed upon. C. C. 2764.

In the present case, neither money nor notes were given. By the sale, a house and lot were sold for a certain sum, which was not payable as long as the vendee would pay a certain interest in advance. C. C. 2752.

The essential distinction between the contract of annuity and that of rent is, that in the former a sum of money is delivered, in the latter a tract of land or any other immovable property is conveyed. C. C. 2764, 2750.

In the present case, the vendor ceded the land, and the vendee was, in a certain event, to pay in money the price of the land. The vendor did not deliver any money upon which he was to receive interest, and the vendee agreed to pay interest, not upon money, but upon land.

The argument, that the land ceded was in reality money, because it represented a certain value in money, would, if it were valid, prevent a contract of rent from ever being made, for the value of the property is specified in the contract of rent, or if there has been no valuation, the rent is considered as fixed at the rate of six per cent. on the value. C. C. 2760, 2761.

I am also of opinion, that in the sale by *Claiborne* to *Ezémie Macarty*, she did not render herself personally responsible in such a manner, that if she alienated the property, she would still be liable for the mortgage, but only bound herself whilst in possession of the property to fulfill the obligations incumbent upon her, under the law of the contract of " rent of land," for in the act of sale it is expressly specified, that she assumes the reversion of the mortgage, and agrees to pay the same " *according to the tenor and true intent and meaning of said act of mortgage* from the late *Bernard Duchamp* in favor of the late *Emile Sainet*, of the 10th of February, 1832."

Her intention was, therefore, to submit herself to the same obligations as to

<div style="float:right">SAINET<br>*v.*<br>DUCHAMP.</div>

the mortgage, as *Duchamp* was under to *Sainet;* and as *Duchamp* was only bound for the same in the event of not paying the rent, and only whilst he was in possession of the property, except for the arrears which became due while he was in the possession, so in like manner is she subject to similar obligations. C. C. 2758 ; 1 An., *Succession of Canonge.*

The intention of the parties to this sale is also shown by the declaration therein, that the " reversion of this mortgage had been assumed by the several purchasers under the said *Bernard Duchamp* down to the present seller."

In the sale from *Ezémie Macarty* to the widow, *Blondeau,* the latter also assumed the same obligations to assume and to pay the said mortgage to the acquittance of the present seller and all other preceding parties that the former assumed and promised to pay in her purchase from *Claiborne.* An examination of the various acts of sale shows clearly that she did not subject herself to any other personal obligation than that of paying the mortgage, in the event she did not pay the rent whilst the property was in her possession.

The contract under consideration cannot be considered a sale, for it is essential to a sale that there should be a fixed price. But if this price may never be exigible, then it is the same as if there were no price. In this case, as long as the interest was paid in advance, the five thousand five hundred dollars were not demandable. It seems to me, that the nature of a sale requires that the price should become due at some period of time, however remote. But in this case, the price may never become due, if the interest be punctually paid.

Besides, if a contract of this nature could be considered a sale, it could act with much hardship upon parties. *A* buys a house for ten thousand dollars, which are not to be paid as long as seven per cent. interest upon that sum is paid every year in advance. He keeps the house and has the use of it for one year, then sells it to *B.* The latter pays the interest in advance annually, for thirty years, and then, when the property has decayed, and is comparatively worthless, he refuses to pay the annual interest.

It would be very hard. at the expiration of thirty years, to make *A* liable for the whole price of the house, when he had enjoyed it but for one year, and when he might never be able to get back the money from *B,* who might be insolvent.

In the present case, *Ezémie Macarty* bought this property on the 7th of April, 1836, and sold it on the 29th November, 1837, and this suit was brought on the 20th April, 1857.

When, therefore, the nature of the contract under consideration and the intentions of the parties are weighed, it appears to me that this contract can with more propriety be declared one of rent, than either a sale or annuity.

The judgment of the District Court was for defendants, reserving to the plaintiff his right against the present possessors of the property.

I am of opinion, the judgment ought to be affirmed.

BUCHANAN, J., concurs in this opinion.

---

## SAME CASE—ON A RE-HEARING.

*Julien Seghers,* on a re-hearing, argued as follows :

It is to be remarked, that in the Code of 1825, the contract of *rente foncière* was made on purpose to be in conformity with the usages of Louisiana, and differs from the doctrine of Pothier by the introduction of Articles 2752 and 2759,

which make it a contract *sui generis*, peculiar to our laws and usages, and not exactly in accordance with the old French law, which existed anterior to the French revolution.

An annuity or *rente constituée* exists only when a *sum of money* is delivered; but where *real estate* is conveyed, and, by express agreement, the price is converted into a capital bearing interest forever, as in this case, then the contract is, to all intents and purposes, a contract of rent (*rente foncière*), and the debtor not liable for the rent that becomes due after he has alienated the property.

But it is contended, that the contract under consideration has but one of the qualities called for by the definition, viz: the conveyance of a tract of land; and that it is wanting in this essential particular, viz: there is no reservation of the annual rent of a certain sum of money, *which the other party has bound himself to pay.*

In my humble opinion, this statement is clearly *erroneous*, and in open contradiction with the very wording of the original act, which reads as follows:

. " La présente vente est faite pour et moyennant la somme de ***; étant expressément convenu entre les parties que l'acquéreur aura le droit de prolonger indéfiniment et à sa volonté, lui, ses héritiers et ayans-cause, le remboursement, en payant au vendeur ou à ses héritiers ou ayans-cause, annuellement, les intérêts de la dite somme, sur le pied de sept pour cent par an, payable d'avance ***; *le tout ainsi que l'acquéreur s'oblige.* (*To all which stipulations the purchaser binds himself.*)

Of course, it is very plain to me, that all the reasoning based upon the want of obligation on the part of the vendee, falls to the ground.

Besides, Article 2750 is not the sole one that treats of the contract of rent, and other Articles must be examined to comprehend fully this object.

Article 2752 declares that a contract made bearing the name of a sale, in which the seller does not stipulate the payment of the price, but a capital bearing interest forever, is a contract of rent.

The sale now under consideration appears to be embraced in this Article, for the property is valued at a certain price, which represents the capital, and it bears interest forever.

It is also objected, that there is no obligation on the part of the vendee to pay the rent, which the other party could enforce by an action distinct from his demand to enforce payment of the capital.

It is true, answers Mr. Justice Cole, that the vendor in the contract has the right of demanding the capital as well as the interest, in default of payment of the interest, and that the interest is payable in advance; but the parties, by thus changing the features of their contract, *on immaterial points*, from those of the contract of rent in the Civil Code, have not destroyed the material characteristics of the contract of rent which are impressed upon this act.

Besides, the vendor would have the privilege of waiving the right of demanding the capital, and might sue for the interest alone.

The clause in the sale making the capital due at once in the event the interest be not paid, is made for the benefit of the vendor, and may be waived by him.

The essential parts of the contract of rent are, that one party cedes to the other in perpetuity a tract of land, or any other immovable property, and agrees that the latter shall hold it as owner, but reserving to the former an annual rent. The Civil Code does not make it essential that the rent should not be made payable in advance, nor that in default of payment of the rent, the capital should not be exigible at once, as well as any rent that might be due at the commencement of the suit.   C. C. 2750, 2751.

It has been finally objected, that the rent charge being inherent in the property burthened with it, is itself susceptible of being mortgaged, C. C. 2763, and as the rent was payable in advance, there is nothing to mortgage.

The right of mortgage given by this Article is for the benefit of the vendor, and if he thinks proper to mould his contract so that it cannot be enforced, there is nothing in the law to prevent him from so doing.

In conclusion, I beg leave to quote a few passages from a very old book, viz: " Dictionnaire de Droit et de Pratique, par Claude-Joseph De Ferrière. Paris, 1754." Both this author and Pothier agree with the Civil Code of 1825; but our Code differs from their doctrine by the introduction of Articles 2752 and 2759, which add some new features to the *rente foncière.*

Ferrière, speaking of the *bail à rente,* says: " c'est un contrat par lequel le pro-

priétaire d'une maison ou d'un hèritage se démet et se dessaisit entièrement à per- pétuité de toute sa propriété, et la transfère en la personne du preneur, pour en jouir, comme il fesait, moyennant une certaine pension payable par chaque année, soit en argent, ou en grain, ou autres espèces."

" Cette rente est appellée foncière, parce qu'elle est dûe pour raison du fonds, et en tient lieu au bailleur ; à la différence de la rente constituée, qui est simplement constituée à prix d'argent."

" Cette rente de bail d'héritage est plus réelle que personnelle, parceque c'est une charge qui est imposée sur la chose ; ensorte qu'elle suit le possesseur, ce qui fait que la chose ne peut être transférée qu'à la charge de cette rente. De ce même principe il s'en suit que le preneur n'est tenu de payer cette rente que tant qu'il est détenteur de l'héritage."

The principal changes introduced by our Code are, first, that the rent charge which by the old French law was perpetual, is *now* essentially redeemable, Art. 2759 ; and 2dly, that a contract made bearing the name of a sale may be *now*, nevertheless, a contract of rent. " C'est un contrat fait sous le nom de vente, dans lequel un prix est mentionné, *mais l'on n'exige point le paiement de ce prix ;* au contraire, on en fait un capital portant intérêt à perpétuité. C'est donc un bail à rente *d'après le Code*, et non pas un contrat de rente constituée. La cour doit faire attention que notre Code est plus clair et plus explicite que les anciennes coutumes françaises, commentées par Pothier et Ferrière. L'article 2752 est positif."

VOORHIES, J. In our former opinion given in this case, we held that the contract under consideration was an annuity, whilst the minority of the court treated it as a rent of land,—*rente foncière ou bail à rente.*

This was a sale of real estate made for the sum of $5500, payable one year after date, it being stipulated that the vendee had the right, at his option, to postpone the payment of this sum indefinitely, upon accounting for the interest at the rate of seven per cent. yearly in advance.

There was no *delivery of a sum of money* by the creditor to the debtor ; nor any stipulation not to *reclaim it*, so long as the *receiver* paid the rent, consequently the contract in question is not one of annuity. C. C. 2764. Even had a note been delivered by the vendee to the vendor, the result would not have been different in this respect. But, at all events, no note was produced ; and, in fact, none was ever given.

Under the Articles 2750, 2751, 2752 and 2759 of the Civil Code, the contract was one of rent,—*rente foncière.* There was an *immovable property conveyed ;* and it was stipulated that the trasferree should hold *as owner ;* that a *certain quantity of fruits* should be paid annually, and that the conveyance was made *in perpetuity.* It is true that it was agreed that the price should be paid in one year, but at the same time the parties agreed that the vendee had the right to decline forever paying this amount, on condition of paying interest in advance, thereby establishing a capital bearing interest forever.

The Code says : " A contract of sale, in which it is stipulated that the price shall be paid at a future time, but that it bears interest from the day of sale, is not a contract of rent. On the contrary, a contract made, bearing the name of a sale, in which the seller does not stipulate the payment of the price, but a capital bearing interest forever, is a contract of rent." C. C. 2752.

The stipulation to pay the principal, in case the interest remained unpaid, is merely a mode adopted by the parties to redeem the rent charge ; for, says the Code : " The rent charge, although stipulated to be perpetual, is essentially redeemable ; but the seller may determine the terms of the redemption, and stipulate that it shall not take place until after a certain time, which can never exceed thirty years." C. C. 2759.

The objection raised, under the provisions of Articles 2762 and 2763 of the

SAINET
v.
.DUCHAMP.

Civil Code, that in the case at bar, the rent charge would not be susceptible of mortgage, or liable to seizure and sale, because the interest was required to be paid in advance, involves a confusion of ideas and a petition of principle. It is the rent charge, which is *an immovable*, that is susceptible of mortgage, and not the revenues accruing annually. C. C. 2763. In the second place, although it be true that the rentor cannot have the property seized and sold, unless there be due at least one entire year's rent, it does not follow that he is bound to wait for the expiration of the year to do so, if the yearly rent falls due in advance. It is no answer to say that the plaintiff could not seize the property in question for the payment of the yearly rent, because the owner of the land might put an end to the contract of rent,—*rente foncière*, by paying the capital. The right of redemption is not incompatible with the existence of the rent charge ; on the contrary, the Code says this contract, "although stipulated to be perpetual, is *essentially* redeemable." C. C. 2759. 8 L. 286, *Clark's heirs* v. *Christ's Church*.

It is suggested that there is, on the part of the vendee, no legal obligation to pay interest to the vendor, because its payment being left at the will of the obligor, the condition is potestative, and therefore null and void under Art. 2029 C. C.

The plaintiff in his petition, however, does not take this view of the case ; he prays that the stipulated interest be allowed by the court. In this respect, he has given a correct interpretation to the contract; it is proper to state that it was not the payment of interest, that was left at the will or option of the vendee, but the indefinite postponement of the payment of the capital on condition of paying in advance the yearly interest. The contract states express that it is agreed between the parties : " que l'acquéreur aura le droit, de prolonger, indéfiniment et à sa volonté, lui, ses héritiers ou ayans-cause, le remboursement de la dite somme de $5500, en payant au vendeur, ou à ses héritiers, ou ayans-cause, annuellement, les intérêts de la dite somme sur le pied de sept pour cent payable d'avance." In the absence of any stipulation to pay interest, the property being productive of fruits, the vendor would be entitled to legal interest; but the parties have stipulated a rate of interest, and such is their own interpretation of it in the pleadings.

It is out of the question to hold the contract to be an annuity, and at the same time raise the objection to its being a *rente foncière*, that there is no legal obligation to pay the interest. If the objection be well founded, it is fatal as much to the one as to the other. The truth is that there is but one alternative ; it is either a rent charge or an ordinary contract of sale. In either hypothesis, the doctrine held by this court, in its former opinion, is evidently erroneous.

After a thorough investigation of this case, we have come to the conclusion to reverse our former opinion, in order to adopt the views developed in the dissenting opinion of Mr. Justice Cole.

It is, therefore, ordered and decreed. that our former judgment be avoided and annulled, and that the judgment of the District Court be affirmed, with costs.

LAND, J., dissenting. The ancestor of the plaintiff, sold to *Bernard Duchamp*, a house and lot for the price of $5500, which the purchaser obligated himself to pay to the vendor, *at the end of one year from the date of the sale*. And it was agreed between the parties, that the purchaser should have *the right* to prolong the payment of the price *indefinitely and at his will*, on paying to the vendor interest in advance at the rate of seven per cent. per annum. This stipulation was made to extend to the heirs and assigns of the party. Without this stipulation the contract would be a pure and simple sale, at the price of $5500, payable at

the end of the year. The difficulties of the case, therefore, spring out of the stipulation as to the payment of interest, which has been made a part of the contract.

The difference between *the sale*, and the *agreement* to pay interest, is very radical. The sale is absolute, and conveys the title unconditionally, and binds the vendee to pay the price. The agreement to pay interest does not affect the title conveyed to the vendee, nor does it affect his absolute obligation to pay the price— but *granted to him a right to postpone the payment of the price, on the condition of the payment of interest* in advance—which right *he could exercise*, or not, *at his own will* or *pleasure, under the express stipulations of the agreement.*

The *agreement* to pay interest was, therefore, *contracted on a potestative condition*, and gave to the vendor no right of action for its recovery, and was in itself void. C. C. 2029.

Pother says : "It is of the *essence of agreements*, which consist in promising something, that they should produce an *obligation in the party making the promise to discharge it;* hence it follows, that nothing can be more contradictory to such an obligation *than an entire liberty in the party* making the promise *to perform it, or not, as he may please.* An agreement giving such entire liberty would be *absolutely void for want of obligation.* If, therefore, I agree with you to give you something, *in case I please,* such an agreement is absolutely void." Pothier on Obligations, sec. VII. No. 47.

Article 2019 of the Civil Code, is in these words :

"The potestative condition is that which makes the execution of the agreement depend on an event, which it is in the power of the one or the other of the contracting parties to bring about, or to hinder And Article 2029 declares that every obligation is null that has been contracted *on a potestative condition on the part of him who binds himself."*

Now, on what event was the postponement of the payment of the price made to depend? It was on the payment of interest in advance by the vendee, and this payment of interest was, *under the express terms of the agreement, at his entire will and pleasure,* (à sa volenté). Such an obligation or agreement is not only declared by Pothier, but by our Civil Code, *to be absolutely void.*

Can it then be said that the vendor had a right of action for the recovery of the interest? Can a *void obligation* be made the *foundation* of an action, and become the basis of a judgment of a court of law, or can a party be bound by an obligation, which the law declares void?

The agreement to postpone the payment of the price, being contracted on a potestative condition and consequently void, created no legal obligation to pay the interest, nor gave any right of action for its recovery. C. C. 1750, 1753. To constitute the contract of rent, it is *essential* that the *rentee* should *legally bind himself to pay the interest, or rent.* Article 2750 of the Code, declares that the contract of rent for lands, is a contract by which one of the parties conveys and cedes to another a tract of land, or other immovable property, and stipulates that the latter shall hold it as owner, but reserving to the former an annual rent of a certain sum of money, or of a certain quantity of fruits, *which the other party binds himself to pay to him.*

If, therefore, the contract in this case is one of rent, we have before us a rentee in possession of the land conveyed, who has contracted *no legal obligation to pay the rent,* and against whom *no action* lies for its recovery.

Again. As a consequence of a contract of rent, the *rentor* has a *right* of mort-

*gage* on the property conveyed, for the payment of his rent, and the *rent itself is susceptible of being mortgaged by him.* C. C. 2762, 2763.

Now, if the obligation to pay interest in the contract before the court, is void, *as a principal obligation,* how can the accessory right of mortgage attach to it, or the rent stipulated to be paid by it, be susceptible of mortgage?

The contract, therefore, viewed as one of rent, *is wanting in an essential requisite,* to-wit: a legal obligation on the part of the rentee to pay the rent, and a right of action, as a consequence on the part of the rentor. In the absence of *these essential requisites,* the contract cannot be interpreted or construed to be one of rent, and as such enforced.

It is to be observed that the purchaser did not even *bind himself to pay the interest,* but that it was agreed between the parties, that he should have *the right to do so if he pleased,* and thereby postpone the payment of the price. It is, therefore, difficult to affirm as a legal proposition, that the non-payment of interest would be a violation of his contract.

Whether the contract is one of annuity or sale, with a privilege granted to the vendee of postponing at his pleasure the payment of the price by the payment of interest in advance, it is unnecessary now to consider, as the agreement has been considered in argument as an annuity or rent charge. In my opinion, it is not one of *rent,* and therefore see no reason to reverse the judgment of the court heretofore pronounced, and to declare the contract *one of rent, and not a contract of annuity.*

MERRICK, C. J., dissenting. In addition to what is said by Mr. Justice Land, and was formerly said by a majority of the court, there is another view which may be taken of this case. If the suit presents a case of *rente foncière,* then the vendee incurred no personal obligation to pay the interest upon the $5,500, the price of the sale, independent of his possession of the property, but the obligation to pay the interest was impressed upon the thing itself, and the vendor retained in its place a right upon the thing, a *jus in re.* Now, when we look at the contract, we shall find, that the vendee personally assumed the price of the sale. The language is :

"The present *sale* is made for and in consideration of $5,500, which the purchaser *binds himself to pay to the vendor in one year from this date,* it being expressly agreed between the parties, that the purchaser shall have the right of prolonging indefinitely at his will, to him, his heirs or assigns, the reimbursement of the said sum of $5,500, by paying to the vendor, his heirs or assigns, and annually, interest at the rate of seven per cent. per annum, payable in advance, at the domicil of the vendor, or his heirs, any where in the parish ; for all which the purchaser hereby binds himself."

Now, who bound himself to pay the price? The answer of the contract is, *the vendee* in person. When did he bind himself to pay the price?

The contract says, in one year, or at farthest, whenever after that period, the interest shall not be paid in advance.

Then here, is unquestionably a personal obligation binding upon the vendor to pay the price of the property. He does not undertake to bind the land. Nothing is reserved out of the land. There is no partial dismemberment of the property, but the whole, the *dominium,* passes to the vendee. Hence, the vendor has retained no *real* right in the property, which he can sell or mortgage. All that he has is the personal obligation of the vendee to pay, (as he has promised,) and a mortgage and *vendor's* privilege to secure the payment of the *price.*

A comparison of the contract under consideration, with each and all of the Articles of the Code on the subject of the *rente foncière*, has failed to enable me to discover the essentials required for such contract.

Pothier says, that " it is *of the essence* of the *rente foncière*, that the vendor (bailleur) shall *reserve* in the property a right of annual and perpetual rent, if the contract is in perpetuity ; or for the time it ought to continue, if it is only made for a certain time."

In another place, he says : " As in the contract of sale, the price must be certain and determinate. So in the contract of rent charge, the rent which the vendor (bailleur) *reserves* in the property, must be certain and determinate. It is for this reason, that if it is said by the contract that such a piece of land is charged with a rent without saying for how much ; or if it is said that the property is charged with the same rent as it was formerly charged, and formerly it had not been charged with any rent ; it is evident that there would be no contract of rent charge, in the one case or the other, and the contract would produce neither an alienation of the property, nor any obligation of the parties."

" The differences" (between rent charge and sale) " are first, in this, in the contract of sale, the price can consist only *in a certain sum of money*, otherwise it would not be a sale. but some other contract, as we have seen in the contract of sale. On the contrary, it is not important that the rent should be of a sum of money. It may be a certain quantity of fruits or provisions. For example. so many quarters of wheat ; so many puncheons of wine ; so many pounds of butter," &c.

" The rent charge can also consist in a proportion of the fruits ; as the charge of giving to the lessor (bailleur) every sixth sheaf of wheat which shall be harvested, or so many gallons of wine for each puncheon which shall be secured. This kind of rent is called *champart ;* it is a peculiar kind of rent of which we shall not treat in this place."

" A second difference is, that in the contract of sale the price consists in a single sum of money which is due, (or contracted for,) as a whole, at the instant of the contract, when even by the agreement of the parties, the payment has been deferred and divided into several terms. On the contrary, in the rent charge, the rent only takes its rise and is due by portions corresponding with the time which has elapsed from the possession of the tenant or his successors."

" In fine, the third difference, which is the main one, is that in the contract of sale, *the price is the debt of the person* and *not of the estate* which is sold, On the contrary, in the contract of rent charge, the rent which the landlord (bailleur) retains, is a charge *in rem* (charge réelle), *which is imposed upon the estate*, subject to the rent, and which is due principally by the estate, although the tenant and his successors may be also, by reason of the estate which they possess, personal debtors of the arrearages." Pothier, Bail à Rent, Art. 2, sec. 1.

As the definitions and distinctions of Pothier are principally adopted by our Code, the explanations of this author show clearly what is intended by the Code in reference to the *rente foncière*.

Again : Suppose the first or second year after this contract was entered into, that the property had been subject to a crevasse or some other calamity by which the value had been reduced to one-third, could the vendee have refused to pay the interest in advance, and then have escaped the payment of the price, which he had bound himself to pay, and have turned the vendor over to the depreciated estate for the price ? Suppose the vendee had divided the estate and

SAINET
v.
DUCHAMP.

made sale to several persons, and they had failed to pay the rent, would the vendor have been driven to several real actions against each sub-vendee?

It seems to me, as explained in the former opinion of the court, that the vendee assumed a personal obligation, and that the annuity was formed from the price due in money for the sale of a tract of land.

I cannot forbear quoting another passage from Pothier, which explains the object of retaining the mortgage, as in this case. He says:

"The *rente foncière* is also a real charge very different from a mortgage with which an estate is encumbered, upon which an annuity established in consideration of money, or by gift or legacy, has been assigned. This mortgage is only an accessory obligation on the property, the better to assure the personal obligation of him who has constituted the annuity, or who has been charged with it by the testament. On the contrary, the charge of the *rente foncière* with which the estate is charged, is a *principal obligation of the estate*; it is the estate which is the principal debtor, rather than the person of the tenant, who is bound for the rent only, *because he possesses the property*, and because the charge of the property is of such a nature that the property can only be relieved of the rent by the act and agency of the possessor, who must pay the arrearages for the property." Ib., chap. 2, sec. 3, No. 19.

Turning again to the contract, we find, as we said at the outset, the *personal obligation* of the vendee; but where do we find any words equivalent to the reservation of rent? Or any stipulation that the property should pay any rent? Where are any words equivalent to a dismemberment of property or the reservation of any of the *jura in re* to the vendor? What property then did he retain in the thing which he could sell or mortgage?

I see no reason to doubt the correctness of the former decree, and as the vendee bound himself personally and expressly, and as the term for the payment of the price has recently terminated by the condition, I think the former decree ought to remain undisturbed.